UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TRBR, INC., d/b/a SUPERIOR BUICK GMC and TRBR II, INC., d/b/a/ SUPERIOR BUICK,<br><br>   Plaintiffs,<br><br>v.<br><br>AMERICREDIT FINANCIAL SERVICES, INC., d/b/a GM FINANCIAL, and GENERAL MOTORS, LLC,<br><br>   Defendants. | Case No. 20-11269<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER
GRANTING GM FINANCIAL'S MOTION TO DISMISS [35]**

Having dismissed all but two claims against General Motors, LLC and ruled that Plaintiffs' claims against GM Financial are not subject to compulsory arbitration, the Court now turns to GM Financial's motion to dismiss Plaintiffs' claims for failure to state a claim.

Plaintiffs are two auto dealerships that sell Buicks and GMCs: TRBR, Inc. and TRBR II, Inc., doing business as Superior Buick GMC and Superior Buick, respectively. The two defendants are Americredit Financial Services, Inc., which provides financing to dealerships as GM Financial ("GMF"), and General Motors, LLC ("GM"), the manufacturer and distributor of the cars to the dealerships. Plaintiffs allege that GM and GMF worked together to undermine their dealerships in violation of state and federal law. (ECF No. 13.) They asserted over sixteen counts in this suit,

ranging from race discrimination to antitrust to breach of contract. Plaintiffs say that GM and GMF accused them of abusing family discount programs for GM employees, former employees, and their families (formally called the "Vehicle Purchase Program" or "VPP" program). (ECF No. 13, PageID.85–86.) They allege that GM then imposed enhanced verification procedures for VPP customers that relied on improper racial stereotypes, for example, assuming that related family members would have the same last name or skin tone. (*Id*.) Plaintiffs allege this damaged their business, ultimately causing GMF to terminate their financing agreements and preventing Plaintiffs from ordering new inventory through GM. (*Id*. at PageID.90–91.)

After significant motion practice, the Court has now dismissed all of Plaintiffs' claims against GM for failure to state a claim except for the claims under the Automobile Dealer's Day in Court Act and the Sherman Act. (ECF No. 31.) The Court has also granted GMF's request to strike Plaintiffs' jury demand, ruled that Plaintiffs' dispute with GMF is not subject to an arbitration clause, and granted leave for GMF to file a renewed motion to dismiss now that this court's jurisdiction is settled. (ECF No. 30, PageID.578.)

GMF has now filed its renewed motion to dismiss Plaintiffs' claims for failure to state a claim under Rule 12(b)(6). (ECF No. 35.) For the reasons given below, the Court grants GMF's motion, dismissing all of Plaintiffs' claims against GMF.

### I. Background

Because GMF seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the factual allegations in Plaintiffs' complaint as true and draws

2

reasonable inferences from those allegations in Plaintiffs' favor. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

### A. The Parties

Defendants GM and GMF are subsidiaries of General Motors Corporation. (*See* ECF No. 15, 18, 31.) GMF is a financial services company that provides inventory financing that enables dealers to buy motor vehicles to hold in inventory, a commercial financing arrangement called "dealer floor plan financing." (*Id.* at PageID.80.) GM manufactures and distributes the cars. (*Id.*)

Plaintiffs TRBR and TRBR II own and operate automobile dealerships for General Motors. (ECF No. 13, PageID.81.) The shareholders for TRBR and TRBR II are Basam Robin and Tanya Robin, who are Arab Americans of Chaldean heritage. (*Id.* at PageID.82.) (It appears from the record that the Robins are the sole shareholders of both companies, although they do not say so explicitly.)

### B.  Plaintiffs' Claims

As Plaintiffs recount in their complaint, TRBR entered into a franchise agreement with GM for a dealership in Dearborn, Michigan on January 15, 2015 (the "TRBR Dealer Agreement"). (ECF No. 13, PageID.81.) GMF extended credit for TRBR to buy vehicles for the dealership through a Master Loan Agreement and other loan documents signed by TRBR on November 1, 2016 (the "Master Loan Agreement" or "MLA"). (*Id.* at PageID.82; ECF No. 16-1.)

Plaintiffs expanded to a second location the following year. On November 17, 2017, TRBR II entered into a franchise agreement with GM for a dealership in Battle

3

Creek, Michigan (the "TRBR II Dealer Agreement"). (ECF No. 13, PageID.81.) Plaintiffs executed an Addendum to the Master Loan Agreement and other loan documents with GMF for dealer floor plan financing at the second dealership (the "Addendum"). (ECF No. 13, PageID.82.)

After opening their Dearborn dealership in 2015 and Battle Creek dealership in 2017, Plaintiffs received a number of awards, including the GM Buick and/or GMC Dealer of the Year Award in 2015, 2016, and 2017, as well as other awards for sales volume. (ECF No. 13, PageID.83.)

Plaintiffs allege that problems began in February 2019 when Defendants "commenced an illegal scheme" to "discriminate and harm plaintiffs." (*Id.*) The alleged scheme began when Plaintiffs ordered thirty Yukon trucks from GM, but delivery was delayed two months because of flooding. (*Id.* at PageID.84.)

GMF demanded immediate payment for the trucks despite the delivery delay and Plaintiffs' inability to sell the trucks to customers. (*Id.*) Plaintiffs were late on the payment, known in the auto industry as being "out of trust." (*Id.*) On May 21, 2019, GMF attempted to collect a bank draft, but the request was returned for insufficient funds. (*Id.*) GMF then imposed an interest rate increase and stricter payment requirements on Plaintiffs. (*Id.*) Plaintiffs allege that as a result, they were "unable to do business, purchase vehicles, provide service or access [their] open accounts." (*Id.* at PageID.85.)

Plaintiffs turned to GM for help, but claim they were met with discrimination. Representatives for TRBR and TRBR II met with five GM executives on May 23, 2019,

in Detroit. (*Id.*) Plaintiffs allege that at the meeting, GM executives Steven Fahner and Philip Lickman "raised . . . certain issues . . . concerning the plaintiffs' compliance with a GM employee family discount program." (*Id.*) The family discount plan is open to active and retired GM employees and their families. (*Id.*) Plaintiffs allege that at the meeting, Fahner and Lickman stated "several times" that Plaintiffs sold "too many cars to Arabs with discount codes from aunts and uncles." (*Id.* at PageID.86.) The two GM executives also expressed doubt that certain customers could be related if they did not both have an Arabic last name. (*Id.*) According to Plaintiffs, at the end of the meeting Fahner essentially said to Lickman: "If I'm white and you are black, that is an automatic reason to question whether you qualify for the VPP [on the basis of a family relationship]." (*Id.*) One of the executives handed Plaintiffs a letter stating the Dearborn dealership was in breach of the Dealer Agreement (the TRBR Dealer Agreement) for alleged violations of the VPP program. (*Id.*) Plaintiffs received this notice for the Dearborn dealership only. (*See* ECF No. 13, PageID.86.)

The letter imposed new verification procedures for the Dearborn dealership to provide the VPP family discount. (*Id.*) The new procedures required interested customers to provide a birth certificate, marriage certificate, or other documents to prove their relationship to the employee discount holder. (*Id.*)

Plaintiffs contested GM's allegations of misusing the family discount in a letter dated June 21, 2019. Plaintiffs "acknowledged that there may have been some prior deficiencies by certain of their salespeople and other staff with regard to the family discount and other discount plans, which were uncovered in 2018." (*Id.* at PageID.86–

5

87.) But Plaintiffs insisted that the "issue had been corrected and more closely monitored." (*Id.* at PageID.87.) Plaintiffs' letter also explained their concern that the new verification procedures would be intimidating and have a disparate impact on their customers, who felt insulted and targeted on the basis of their national origin and ethnicity. (*Id.*) Plaintiffs state they received no response. (*Id.*) They sought to raise their concerns with more senior GM personnel, but received a "cursory denial." (*Id.* at PageID.88.)

Plaintiffs allege (on information and belief) that "other than [their] two dealerships, no other GM dealership was required to comply with this unfair and targeted verification process." (*Id.*) They allege that "[a]s a result of this discriminatory and illegal verification process . . . the loss of customers and sales was immediate." (*Id.*) The change was so significant that GM called to ask why monthly sales of new vehicles fell from 281 vehicles in June 2018 to 66 vehicles in June 2019. (*Id.*)

At some point after GM imposed the new verification methods for the VPP program, GMF advised Plaintiffs that they were behind on payments and stopped financing new inventory. (*Id.* at PageID.89.) But Plaintiffs state that GMF "eventually funded" some vehicles and acknowledged that "the error was on [its] end." (*Id.*)

Nature then intervened. Around June 1, 2019, a severe hailstorm damaged 100 percent of the inventory at the Battle Creek dealership. (*Id.* at PageID.90, 91.) Plaintiffs allege that GM and GMF were aware of the damage. (*Id.* at PageID.90.)

On June 6, 2019, GMF notified TRBR and TRBR II that it was terminating all future borrowing pursuant to Section 18.2 of the MLA and Addendum, effective August 6, 2019. (*Id.*) That provision allows GMF to terminate future borrowing "at any time and for any or no reason." (ECF No. 16-1, PageID.172.) GMF demanded payment of all outstanding obligations by October 7, 2019, but later allowed an extension until February 2020. (ECF No. 13, PageID.90.)

Plaintiffs found four potential replacement lenders, but none would provide financing without proof that Plaintiffs' default had been cured. (*Id.* at PageID.91.) Plaintiffs do not explain when this default occurred, or whether it was related in any way to the default that they allege was GMF's mistake. (*See id.*) Plaintiffs allege they were "shut off" by GM and "unable to order new vehicles or parts." (*Id.* at PageID.91.) But it is not clear from the pleadings whether they attribute this to GMF's termination of financing, the consequences of the new VPP verification requirements, the loss of inventory due to the hailstorm, or some other factor.

According to Plaintiffs, GM continued to act in bad faith. GM agreed to buy the Battle Creek dealership and the damaged inventory from TRBR II, but then "cancelled the sale on the last day possible" under the purchase agreement. (*Id.*) As a result of the cancellation, TRBR II incurred two months of operating expenses with no income to cover the costs. (*Id.* at PageID.91.)

Despite all this, Plaintiffs and GM have continued their franchise relationship. (*Id.* ("[T]he Dealer Sales and Services Agreements between GM and Plaintiffs have not been terminated by GM.").) And although their financing arrangement is unclear,

7

Plaintiffs continue to operate both the Dearborn and Battle Creek dealerships. (*Id.* at PageID.79.)

## C. This Litigation

Plaintiffs filed this suit on May 21, 2020, asserting 16 counts in total against GM and GMF. (ECF No. 1.) Against both Defendants, Plaintiffs assert six claims under the Michigan Motor Vehicle Franchise Act (Counts I–VI), a claim under the Federal Automobile Dealer's Day in Court Act (Count VII), a Sherman Act claim (Count VIII)[1], a claim under the Michigan Elliott-Larsen Civil Rights Act (Count XVI), and claims for breach of contract (Counts IX, X), breach of good faith and fair dealing (Counts XI, XII), and tortious interference (Counts XIII, XIV). (ECF No. 13, PageID.97–127) (Plaintiffs formally withdrew their Elliott-Larsen claim in response to GM's motion to dismiss. (ECF No. 24, PageID.477, n.1).)

The Court has now dismissed all claims against GM except two: Plaintiffs' claims under the Automobile Dealer's Day in Court Act and the Sherman Act. (ECF No. 31.)

GMF filed a previous motion to dismiss for failure to state a claim (ECF No. 17), but the Court dismissed that motion as premature pending a resolution of whether arbitration was the proper forum for the dispute (ECF No. 20). The Court subsequently granted GMF's motion to strike the jury demand, concluded that

---

[1] The heading of the claim suggests it is against GM only, but the allegations appear to be against both Defendants, which is to be expected in a conspiracy claim.

arbitration was not proper under the parties' agreement, and granted leave for GMF to re-file their motion to dismiss. (ECF No. 30.)

So GMF's renewed motion to dismiss is now before the Court. (ECF No. 35.) Plaintiffs have not amended their complaint since the Court's last review of the plausibility of their claims.

GMF attaches the parties' Master Loan Agreement, GMF's SEC Registration Statement Form SF-3, and its SEC Form 10-K. (*See* ECF No. 35.) The Court may consider these exhibits at this stage without converting the opinion to one of summary judgment because the Master Loan Agreement is referenced in and central to Plaintiffs' complaint, and because the SEC forms are public records. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (at the motion to dismiss stage, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

The parties' positions are briefed adequately and the motions can be decided without further argument. E.D. Mich. LR 7.1(f).

## II. Legal Standard

The Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668

F.3d 393, 403 (6th Cir. 2012) (cleaned up). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *HDC*, 675 F.3d at 614 (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008)).

### III. Analysis

Because Plaintiffs' federal claims are the basis of this Court's subject-matter jurisdiction, the Court begins with those claims.

#### A. The Automobile Dealer's Day in Court Act (Count VII)

Plaintiffs bring this claim against both Defendants. (ECF No. 13, PageID.110.) This claim survived GM's motion to dismiss because, taking the allegations in a light most favorable to Plaintiffs, it is at least plausible that GM demanded Plaintiffs use a verification system that relies on racially discriminatory standards to evaluate family relationships for pricing discounts. (ECF No. 31, PageID.590.)

However, the ADDCA does not apply to GMF because GMF is a financial service provider, not a manufacturer. The ADDCA provides: "An automobile dealer may bring suit against any automobile *manufacturer* engaged in commerce" and shall recover damages for "failure of said automobile manufacturer . . . to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C.

§ 1222. The statute defines an "automobile manufacturer" as "any person, partnership, corporation, association, or other form of business enterprise engaged in the manufacturing or assembling of passenger cars, trucks, or station wagons, including any person, partnership, or corporation *which acts for and is under the control of such manufacturer.*" 15 U.S.C.A. § 1221(a) (emphasis added).

To state a claim under the ADDCA against a subsidiary providing financial services, a plaintiff must make specific allegations to assert an agency relationship between a subsidiary and a parent. *See Bonnano v. Chrysler Corp.*, 603 F. Supp. 832, 836 (S.D. Ohio 1985). But in this case, Plaintiffs have pled no facts to allege that GMF "acts for and is under the control of" GM. (*See* ECF No. 13.) Although Plaintiffs allege that GMF "is the wholly owned captive subsidiary of GM" and "the captive finance arm of GM," those allegations are not sufficient to establish the requisite agency relationship. *See, e.g.*, *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 47 (Bankr. E.D.N.Y. 2006) (dismissing ADDCA claim against Ford Motor Credit Company because, under New York law, "[m]erely alleging that FMCC is Ford's wholly owned subsidiary is insufficient to allege the existence of an agency relationship between Ford and FMCC."); *Bonnano*, 603 F. Supp. at 835 (recognizing "the hesitance of other federal courts . . . to presume as a matter of law that a wholly-owned subsidiary such as Ford Credit or Defendant Chrysler Credit 'acts for or is under the control of' its parent.").

Plaintiffs argue in their response that these cases indicate that an agency relationship is a question for the trier of fact (ECF No. 37, PageID.750). Even if

11

Plaintiffs' reading of these cases is correct, they have not alleged any specific facts establishing an agency relationship between GM and GMF that would make GMF a proper defendant under the ADDCA. Sealing this fate, Plaintiffs appear to have agreed in their contract that GMF is not an agent of GM. The MLA states: "Lender is not, and shall not be deemed to be, the agent, employee or alter ego of the Borrower's New Motor Vehicle Franchisor . . . and that Lender is not under the control of any New Motor Vehicle Franchisor." (ECF No. 35-2, PageID.708.)

Because Plaintiffs have not plausibly alleged that GMF acts for and is under the control of GM's manufacturing parent company, the ADDCA claim against GMF (Count VII) will be dismissed.

### B. Sherman Act (Count VIII)

Plaintiffs' second federal claim is for restraint of trade under the Sherman Act, 15 U.S.C. § 1, et seq. This claim also survived GM's previous motion to dismiss because GM did not provide a complete record at that time to show that the claim was precluded by the Defendants' corporate relationship. (ECF No. 31, PageID.591–592.)

As GMF points out in its briefing, it is not fully clear whether Plaintiffs attempt to assert a Sherman Act claim against GMF. (ECF No. 35, PageID.680.) All of Plaintiffs' allegations presented with their Sherman Act claim describe conduct by "defendants"; the heading for Count VIII asserts the Sherman Act claim against GM only; yet the substance of Count VIII describes conduct by both GM and GMF. (ECF No. 13, PageID.111–113.)

To the extent that Plaintiffs assert a Sherman Act claim against GMF, or GM for that matter, that claim is now dismissed as to both Defendants because the record conclusively shows that GM and GMF are wholly-owned corporate siblings, with General Motors Company as a shared parent. (*See* GM Corporate Disclosures, ECF No. 15, PageID.135; GMF Corporate Disclosures, ECF No. 33, PageID.649.) (The Court may consider these records because they are public information, referred to in the complaint, and central to Plaintiffs' allegations.) "[S]ister companies with the same parent" are "incapable, as a matter of law, of conspiracy." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008).

So Plaintiffs' Sherman Act claim (Count VIII) is dismissed as to both Defendants.

\* \* \*

The Court therefore dismisses both of Plaintiffs' federal claims against GMF. This leaves the following state law claims: six counts under the Michigan Motor Vehicle Franchise Act (Counts I–VI), breach of contract (Count X), breach of good faith and fair dealing (Counts XI), and tortious interference (Counts XIII). The Court will exercise supplemental jurisdiction and dismiss the state claims as well.

### C. Michigan Motor Vehicle Franchise Act (Counts I–VI)

Plaintiffs asserted four claims (against both Defendants) under the Michigan Motor Vehicle Franchise Act, Mich. Comp. Law § 445.1561, *et seq.* Counts I and II are based on Section 445.1567(1), which addresses cancellation of a dealer agreement. Counts III and IV are based on Section 445.1574(1)(e)(ii), which prohibits an auto

13

manufacturer from offering different dealerships any incentives or promotions "without making the offer available to all" dealers. And Count V is based on Section 445.1574(1)(m), which provides that a manufacturer shall not "unfairly prevent a new motor vehicle dealer that sells, transfers, or exchanges a new motor vehicle dealership from receiving reasonable compensation for the value of the new motor vehicle dealership."

The Court previously dismissed all Michigan Motor Vehicle Franchise Act claims against GM for failure to state a claim. (ECF No. 31, PageID.593–597.)

And here again, Plaintiffs cannot state a claim against GMF because the Michigan Motor Vehicle Franchise Act does not apply to their relationship. In the Court's prior order enforcing the parties' jury trial waiver, the Court found that the Master Loan Agreement is not a "dealer agreement" governed by the Franchise Motor Vehicle Act. *See* Mich. Comp. Law § 445.l573(1)(h). As the Court explained:

> Plaintiffs do not allege that the MLA is a "dealer agreement." (See ECF No. 13.) The MLA plainly does not establish the terms "under which the dealer purchases and resells new motor vehicles and conducts service operations." Mich. Comp. Laws. § 445.1562(3). Plaintiffs plead that the MLA and its Addendum are loan agreements. (ECF No. 13, PageID.82; ECF No. 16-1; ECF No. 27-1.)

All claims against GMF under the Michigan Motor Vehicle Franchise Act (Counts I–VI) are therefore dismissed.

### D.  Breach of Contract (Count X)

Count X is a breach of contract claim against GMF. (ECF No. 13, PageID.115.)

Plaintiffs do not identify in their allegations any specific contractual term that GMF has allegedly breached. (*See* ECF No. 13.) To state a claim for breach of contract,

a plaintiff must allege "the existence and terms of a contract, that the defendant breached its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp. v. Visteon Corp.*, 904 N.W.2d 192, 202 (Mich. Ct. App. 2017) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014)). Although Plaintiffs describe a "racist, discriminatory" pricing verification program, and "disparately treating plaintiffs," the complaint does not connect these allegations to a specific breach. It is not for the Court to go through the entirety of the referenced Dealer Agreements to determine whether some unidentified provision has been breached in the manner alleged.

Plaintiffs do not respond to this pleading failure in their response. (*See* ECF No. 37.) Because Plaintiffs have not alleged GMF breached any specific terms of their contract, Plaintiffs have not stated a claim for breach of contract. Plaintiffs' breach of contract claim (Count X) against GMF is dismissed.

### E.  Breach of Good Faith and Fair Dealing (Count XI)

Count XI is a breach of good faith against GMF. (ECF No. 13, PageID.116–117.)

Michigan law "does not recognize such an independent cause of action." *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 186 (6th Cir. 2017) (citing *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279–80 (Mich. 2003)). Michigan "uses the principle of good faith to evaluate a party's established contractual obligations or statutory duties, not to create a freestanding right of

15

action." *Id.* (citing *Gorman v. Am. Honda Motor Co., Inc.*, 839 N.W.2d 223, 233–35 (Mich. 2013)).

Plaintiffs again do not respond to this pleading failure in their response. (*See* ECF No. 37.) Because Plaintiffs have not stated a breach of contract claim, they cannot maintain a cause of action for breach of good faith and fair dealing under Michigan law. Count XI is dismissed.

### F. Tortious Interference (Count XIV)

Count XIV is a tortious interference claim against GMF. (ECF No. 13, PageID.118–120.) Under Michigan law, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.". *Hart v. Ludwig*, 79 N.W.2d 895, 897 (Mich. 1956); *see also Indus Concepts & Eng'g, LLC v. Superb Indus., Inc.*, No. 15-cv-13150, 2016 WL 3913711 (E.D. Mich. July 20, 2016) (dismissing tortious interference claim as "indistinguishable from the contractual claim based on the same facts.")

Plaintiffs' tortious interference claim against GMF is similarly indistinguishable from their claims that GMF breached its contractual duties (although, as noted above, Plaintiffs have not identified any contractual term that has been allegedly breached). "Under Michigan law, a defendant acting pursuant to a contract is liable in tort only if he or she 'owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations.'" *Ram Int'l. Inc. v. ADT Security Services, In*c., 555 F. App'x 493, 497 (6th Cir. 2014) (quoting *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 592 (Mich. 2004)).

16

Plaintiffs do not address the tortious interference claim in their response brief. So Plaintiffs appear to have forfeited this claim too. Plaintiffs have not identified any alleged duty held by GM that is distinct from its contractual obligations. So Plaintiffs have not stated a tortious interference claim against GMF. Count XIII is dismissed.

## IV. Conclusion

Accordingly, the Court GRANTS GMF's motion to dismiss Plaintiffs' claims for failure to state a claim. (ECF No. 35.) To summarize:

- All claims against GMF are DISMISSED and GMF is DISMISSED from this case;
- The Sherman Act claim (Count VII) is now DISMISSED as to both Defendants;
- The only claim remaining in this action is the Automobile Dealer's Day in Court Act claim (Count VIII) against GM.

As this case is now being terminated as to GMF, for the sake of judicial economy and efficiency, IT IS FURTHER ORDERED that GMF's one sentence request for costs and fees under certain provisions of the Master Loan Agreement is DENIED.

SO ORDERED.

Dated: October 4, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE